SARAH H. GOODSELL'S APPEAL FROM PROBATE.

Fairfield Co., March T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

Previous to the act of 1885, (Session Laws of 1885, ch. 110, sec. 135,) a will was revoked by marriage and the birth of a child, but not by marriage alone.

That act provides that "if after the making of a will the testator shall marry, or if a child is born to the testator, and no provision is made in the will for such contingency, such marriage or birth shall operate as a revocation of such will." Held to be prospective only, and that it could not operate upon any will where the marriage or birth had already occurred at the time the act was passed, although the testator died afterwards.

As a rule of interpretation all statutes are to operate prospectively unless they contain language clearly retrospective.

A testator made a will in January, 1871, and was married in the following May, the will making no provision for that contingency. Soon after his marriage the testator told his wife that he had made a will which

was in the hands of the executor, and that he would get it and have it destroyed because she was not provided for in it. Immediately after he went to the executor and obtained the will, and showed the envelope containing it to his wife, telling her that it was good for nothing and was to be destroyed. Nothing more was said about it and she supposed it was destroyed, but after the testator's death it was found uncancelled among his papers. Held that the will could not be regarded as revoked.

[Argued March 16th—decided April 1st, 1887.]

APPEAL from the decree of a court of probate approving and allowing the will of John Goodsell; taken to the Superior Court in Fairfield County and heard before *Sanford*, *J.* The following facts were found by the court:

The appellant is the widow of the testator. They were married May 29, 1871. The will was made before the testator and the appellant became engaged to be married. The testator died February 14th, 1886, never having had a child, and leaving a brother and the son of a deceased brother as his next of kin. The inventory of his estate amounts to $16,234.91, of which about $5,800 is personal estate.

In the summer of 1871, and soon after his marriage, the testator told his wife that he had made a will before he had ever seen her, and that he should go to the executor and get it and have it destroyed, because he did not want it to stand the way it was, inasmuch as she was not remembered in it. He said it ought not to stand the way it was. Directly after this conversation he went to Bridgeport, where the executor lived, obtained the will from him, showed the envelope containing it to his wife, and told her that it was not good for anything but to be destroyed, because it left her out. Nothing was ever said between them about the will afterwards, and she supposed it was destroyed, but the testator, during his lifetime, after obtaining the will from the executor, kept it locked up in a drawer in his bureau, the key of which he kept in his own possession. After his death it was found in the drawer, which was locked and the key in the widow's possession. This drawer contained, besides the will, some title deeds of real estate, a quantity of cancelled checks, some pamphlets, old letters, and waste papers.

Another drawer in the same bureau, similarly locked, contained some promissory notes and other valuable papers of the testator. The bureau stood in a small room adjoining his living-room.

The appellant offered to prove that when she married the testator she had but a nominal amount of property, which was soon afterwards entirely lost, and that she then remained without means of her own until the testator's death. Upon objection by the appellee this evidence was excluded.

The appellant claimed that the statements of the testator and the facts above referred to amounted to a revocation of the will in so far as it disposed of personal estate, if not as an entirety, and further that the will had been revoked by his marriage; also that the will had been revoked by the statutes of 1875 and 1885 relating to the effect of a subsequent marriage upon a will.

The court overruled these claims of the appellant and rendered a judgment affirming the decree of the probate court establishing the will. The original appellant appealed to this court. Heman B. Goodsell, heir at law, who had been admitted as a party appellant before the Superior Court, joined in the appeal to this court.

*J. H. Perry*, for the appellant Sarah H. Goodsell.

1. A will may in this state be revoked by parol unless that method of revocation is expressly prohibited by statute. *Card* v. *Grinman*, 5 Conn., 164. If owing to section 8, p. 403, of the Revision of 1866, devises of real estate could not be so revoked, nevertheless bequests of personal property still remained subject to the rule established in that case. The statute prescribing how wills, both of real and personal estate, shall be revoked, was not passed until 1875. Rev. of 1875, p. 370, sec. 7. Wills may be revoked in part (for instance, either as to the devises of real estate or bequests of personal property therein contained) and remain good as to the balance, and should then be admitted to probate only as to the part unrevoked. *Deane* v. *Littlefield*, 1 Pick., 239; *Heath* v. *Withington*, 6 Cush., 497; *Brush* v. *Wilkins*,

4 Johns. Ch., 515; *Sheath* v. *York*, 1 Ves. & B., 390.   Such a qualified probate has heretofore been claimed to be proper by at least one member of the present court.   *Irwin's Appeal from Probate*, 33 Conn., 131.   Mr. Goodsell's will was admitted to probate as an entirety and therefore erroneously if by parol or in any other way it had been revoked in whole or in part.   The declarations and acts of the testator amounted to a revocation.   In *Witter* v. *Mott*, 2 Conn., 68, the testator used the words, " This will is invalid " and then kept the will.   Held to be " an express revocation of it." It should be noticed that although in this case the words of revocation were written, yet it is decided in *Card* v. *Grinman*, that this fact was immaterial and that they would have been equally effective if spoken.   Mr. Goodsell's will was made January 2, 1871.   He married the appellant May 29, 1871.   Shortly after his marriage he told his wife " that he had made a will before he had ever seen her, and that he should go to the executor and get it and have it destroyed, because he did not want it to stand the way it was, inasmuch as she was not remembered in it.   He said it ought not to stand the way it was."   He immediately obtained the will from the executor, " showed the envelope containing it to his wife, and told her that it was not good for anything, only to be destroyed, because it left her out."   For some reason, which it is now impossible to ascertain, he did not accomplish its actual physical destruction, and it was found after his death with " pamphlets, old letters and waste papers," in a place apart from his " valuable papers."   In the case of *Witter* v. *Mott*, last cited, the will was preserved by the testator, and it does not appear but that it was carefully kept among valuable papers ; yet the expression, " this will is invalid," was held to have revoked it.   Shall not the expression " *This will is not good for anything, only to be destroyed*," be as effectual in the case at bar ?   In *Card* v. *Grinman*, the testator declared the testamentary instrument in question " not to be his will," and these were held to be " words of revocation."   See also *Sherry* v. *Lozier*, 1 Bradf. Sur. R., 442.

2. In those states in which a widow in cases of intestacy receives with the children a distributive portion of her husband's estate, marriage after the execution of a will revokes it. *Tyler* v. *Tyler*, 19 Ill., 151; *American Board of Commissioners* v. *Nelson*, 72 id., 564; *Byrd* v. *Surles*, 77 N. Car., 435. The reasons given for the above decisions apply to similar cases in Connecticut, because here also a widow inherits from her husband upon the same principle as a child. *Kingsbury* v. *Scovill*, 26 Conn., 352. And where there are no children, as in this case, she has a decided preference over the next of kin. The common law was so that the birth of a child alone after the execution of the will revoked it, because it would not be considered that a man intentionally disinherited any person who in the absence of a will would have received a share of his property, and therefore unless such persons were in a position to inherit when he made his will, and were not mentioned in it, or unless the possibility of their subsequent existence was provided for in the will, it was held that the testator did not intend such a result, and the will was, *ipso facto*, revoked. *Sherry* v. *Lozier*, 1 Bradf. Sur. R., 437; *Bloomer* v. *Bloomer*, 2 id., 345; *Hughes* v. *Hughes*, 37 Ind., 183, 185; *McCullum* v. *McKenzie*, 26 Iowa, 510; *Sneed* v. *Ewing*, 5 J. J. Marsh., 472. The reason of the above rule, and the reasoning of the courts in the above cases, apply with equal force to the case of a subsequent marriage without children in Connecticut, where the wife, unless expressly disinherited, inherits as a child. Implied revocations are not within the statute prescribing how express revocations of wills shall be made, and therefore not within the statute of 1866 already referred to. Accordingly the revocation implied from the subsequent marriage of Mr. Goodsell revokes the whole will. *Brush* v. *Wilkins*, 4 Johns. Ch., 509.

3. If the will had not already been revoked at common law by the marriage, these statutes expressly revoked it. It is entirely competent for a statute to revoke by its provisions a previously executed will. *Moultrie* v. *Hunt*, 23 N. York, 397. This case is cited with approval in *Irwin's Ap-*

*peal from Probate*, 33 Conn., 138. The only question open to discussion under this claim is whether the statutes referred to were intended to revoke wills then in existence by marriages already made; for it must be conceded that they might have that effect if it was so intended. In the first place, then, we suggest that under the admirable reasoning in the case of *Moultrie* v. *Hunt*, the statutes in question must necessarily affect previously executed wills unless they are expressly exempted from their provisions, and that therefore such was the intention of the statutes. In the next place, we suggest that inasmuch as these statutes simply made that a provision of enacted law which before had been a canon of the unwritten law, they manifestly should apply to cases already affected by that unwritten law. The text books and decided cases abound in suggestions that most of the states have thought it advisable to take the effect of subsequent marriages and births upon wills out of the unwritten law and put it where it will be more certainly known and commonly understood. This does not change, it only promulgates the law, and was especially wise in this state where no case involving the point at issue has ever been decided by our Supreme Court. In the next place, we suggest that these statutes by their terms may well apply to existing facts. They certainly contain no prohibition against such an application, while the act regulating the formal execution of wills was carefully excluded from applying to those already executed. Rev. of 1875, p. 369, sec. 2. In the next place, we suggest that these statutes are remedial, are intended to obviate an evident and gross injustice (as for instance the case at bar), and by operating upon already existing cases work no injustice to the testator. Their whole theory and object is to accomplish what every humane consideration requires us to presume the testator desired, namely, that the chief object of his bounty and his principal distributee in case of intestacy should not be disinherited by a will made with no such contingency in view. The law says that such an intention shall not be believed unless the testator expressly states it, and that

wills open to this objection are manifestly not the wills of their makers and shall not be probated as such. We respectfully submit, therefore, that not to require these statutes to apply to all wills not already probated, the execution of which has been followed by a marriage, is to defeat their manifest purpose, to leave the evil which gave them birth largely unremedied, and to carry out what testators presumably never intended. The counsel for the executor and distant kin contend that to permit the statute to revoke this will would defeat the wishes of the testator by a law of which he had no sufficient notice, and would by subsequent enactment undo what he had taken pains to do in all respects legally at first. We reply that either the common law and these statutes are utterly wrong in their purpose and theory or else the counsel are. The bed-rock principle in all matters relating to the estates of deceased persons is that their property shall be divided as they wished to have it, unless their wishes contravene public policy. If they make no will, the law discovers their intention by following the dictates of natural affection and distributing their property to the next of kin. If they make a will, and its meaning is obscure, the law discovers their intention in the same way. The provisions which prescribe the formalities to be observed in making wills have no other purpose than to insure that the instrument when completed expresses the actual, unbiased and intelligent wish of the testator. The law does not seek to prevent a husband from disinheriting his wife. He may freely do so if he so desires. It only presumes that he does not wish to do so, and the presumption is, and is rightly, so strong as to become conclusive, unless he expressly states such an intention, or, by making his will after marriage, in that way evidences it. The law is simply and entirely an attempt to carry out the testator's intention, and not to abridge or alter his rights. How can its manifest object be attained if it does not apply to cases already in existence?

4. In regard to the excluded testimony referred to in the reasons of appeal, we say that any evidence which would

tend to show the wishes of the testator in regard to his wife's position at his death could not properly be excluded.

*G. P. Carroll*, for Heman B. Goodsell, heir at law.

*R. E. DeForest* and *F. L. Rodgers*, for the appellees.

PARDEE, J. John Goodsell made his will in January, 1871, disposing of real and personal estate. He was married in the following May; he died in 1886; his wife survives; no child was born to them. A brother and a nephew are next of kin. He left the will executed in 1871; it made no mention of his wife; she was not known to him when it was executed. The court of probate approved the will and admitted it to probate. The widow, Sarah H. Goodsell, appealed. The Superior Court dismissed the appeal and affirmed the decree of the probate court. The widow and a nephew of the testator join in an appeal to this court. The reasons assigned are these :—

1. That the court did not hold that the statements and acts of the testator as set forth in the finding amounted to a revocation of the will, at least in so far as it disposed of personal estate.

2. That the court did not hold that the will was revoked by section 135, chapter 110, of the acts of 1885, nor by chapter 84 of the acts of 1875.

3. That the court did not hold that the will was revoked by the subsequent marriage of the testator, at least in so far as it disposed of personal estate.

4. That the court excluded the evidence offered by her in relation to her pecuniary condition as stated in the finding.

By the common law marriage and the birth of a child revoked a will. Because of the strong affection of a father for his child and the presumed absolute dependence of the latter upon the former for the necessaries of life, whenever a man marries and a child is born to him and he dies, having made no change in a will, executed previous to marriage,

which contains no provision in behalf of such child, the law assumes that it does not speak his mind ; that the will if made under the altered circumstances would have been different ; and sets it aside. Marriage without the birth of a child does not support such assumption, for the wife can protect herself by ante-nuptial contract and has dower.

In 1 Redfield on Wills, 298, (4th ed.,) it is said :—" The question was very elaborately reviewed at an early day by the most eminent of the American chancellors, and the conclusion reached upon a thorough examination of the cases from the days of Cicero forward, that the subsequent marriage and birth of a child are an implied revocation of a will, either of real or personal estate ; but such presumptive revocation may be rebutted by circumstances. It seems that a subsequent marriage or birth of a child alone will not amount to a revocation ; both must concur. *Brush* v. *Wilkins*, 4 Johns. Ch., 506. The same conclusion was reached by SHAW, C. J., after a careful examination of the authorities in a case in Massachusetts. *Warner* v. *Beach*, 4 Gray, 162 ; 1 Jarman on Wills, 272, (5th Am. ed. with notes by Randolph & Talcott ;) *Card* v. *Alexander*, 48 Conn., 504.

Cases in Illinois and North Carolina have been brought to our notice, determining that marriage alone is a revocation, for the reason that if there had been no will the wife would have been entitled to a distributive portion of the husband's estate ; and the court assumes that the husband did not intend by will to put her in a worse condition than if he had made none. But we think that the weight of authority is against revocation by marriage alone for the reason already given ; and that the courts in many states in which the wife shares with the children in case of intestacy, are against revocation by marriage alone.

In 1821 a statute was passed which provided that no devise of real estate should be revoked except by burning, canceling, tearing or obliterating it by the testator or by some person in his presence by his direction, or by a later will or codicil. Thereupon revocation by parol or by presumptions or inferences drawn from the pecuniary condition

of the wife, or from the manner or place of keeping a will, became and continued to be impossible until the statute of 1885 went into operation. The statute of 1821 applied to every will containing devises of real estate and every will containing both devises of real estate and bequests of personal property. That is, the presence of a devise of real estate protects the bequest of personal property from every other than statutory revocation, and, so far as that statute is concerned, when a testator executed a valid will for the disposition of both real and personal estate and subsequently married and died, leaving his will unchanged, even if it made no provision for the wife, the law did not revoke a part of it for the purpose of making it express what is assumed, contrary to his written declaration, to have been the real intent of the testator, because thereby would come into operation the assumption that the partial will was contrary to his plan for the division of his estate. Either the scheme of the law is to govern the distribution of the estate in its entirety or the scheme of the testator. A distribution the result of assumption in part and in part of fact, would be offensive both to the law and to the testator.

In 1885 (Session Laws of 1885, ch. 110, sec. 135,) a statute was passed as follows : " If, after the making of a will, the testator shall marry, or if a child is born to the testator, and no provision is made in the will for such contingency, such marriage or birth shall operate as a revocation of such will."

As a rule of interpretation all statutes are to operate prospectively unless they contain language unequivocally and certainly retrospective. The above statute looks forward and not backward. It can be said to be a remedial statute only in the sense that all statutes are passed because they are expected to benefit the public either by lifting burdens or conferring privileges. It is not the casting of a common law rule into the fixed form of a statute ; for there was no such rule in existence. It is the gift of a right to a wife to demand and receive a greater share of her husband's estate, under specified circumstances, than she previously

could receive. We may be of opinion that the right given to the wife in this statute should have been given to her long before; but that is not a valid reason why a law giving additional rights should operate retrospectively. Possibly estates in like situation with the one before us have been settled and property vested; possibly wrong would be inflicted if we should give retrospective effect to this statute.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.