GLASCOTT, Respondent, vs. BRAGG, Administrator, and another, Appellants.

111 — 605
s56 LRA 258
56 LRA 754n

*October 15 — November 5, 1901.*

*Wills: Implied revocation: Marriage and adoption of child.*

1. Under sec. 2290, Stats. 1898 (relating to revocation of wills and providing that nothing therein contained "shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator "), marriage of the testator and birth of a child operate to revoke a will made prior to such marriage and not in contemplation thereof.

2. Under sec. 4024, Stats. 1898 (providing that a duly adopted child "shall be deemed, for the purposes of inheritance and succession by such child . . . the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption "), adoption of a child is equivalent to birth of a child in its effect upon a will made prior to the marriage of the adopting parents.

APPEAL from a judgment of the circuit court for Green county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

For the appellants there were briefs by *J. D. Dunwiddie* and *Jones & Stevens,* and oral argument by *Mr. Dunwiddie* and *Mr. B. W. Jones.*

For the respondent there were separate briefs by *W. A. Corson,* attorney, and *William G. Wheeler,* of counsel, and

Glascott vs. Bragg and another.

oral argument by *Mr. Wheeler*. To the point that adoption does not, like the subsequent birth of a child, revoke the former will of the person adopting, they cited *Davis v. Fogle*, 124 Ind. 41; *In re Gregory's Estate*, 15 Misc. (N. Y.), 407, 13 Misc. (N. Y.), 363; *In re Comassi's Estate*, 107 Cal. 1.

CASSODAY, C. J. It appears from the record, in effect, that January 31, 1870, the deceased, Archibald F. Glascott, when a single man, made a will whereby he purported to give all his property to his brother, *David S. Glascott*, the respondent in this action; that January 11, 1875, the testator married Alice A. Bragg; that June 20, 1881, the testator and his wife duly adopted an infant son of Mary J. Morgan, whose husband had a short time before died; that said infant son was then less than four years of age, and by and upon his adoption his name was changed to *William M. Glascott;* that September 29, 1888, the testator's said wife died; that the testator remained unmarried from the time of the death of his wife, Alice A., until he died himself, April 21, 1899; that he never had any child other than his adopted son, *William M. Glascott;* that at the time of his death he left personal property of the probable value of $7,200, and real estate of the probable value of $3,500, and liabilities of the probable amount of $5,900; that after the death of his wife the testator caused the insurance on his life which had been payable to her, of $2,000, to be transferred to his brother *David S.*, and his sister Mary Glascott, and the amount thereof was paid to them after his death; that during his life the testator also procured and maintained other insurance on his life in the sum of $3,000, payable to his adopted son, *William M. Glascott*, and which since his death has been paid to him; that January 10, 1900, the county court of Green county, after due hearing, refused to admit said will to probate; that thereupon the said *David S. Glascott* appealed from that judgment to the cir-

cuit court for Green county, whereupon the cause was retried, and at the close of the trial judgment was entered admitting the said will to probate, with costs. From that judgment the defendant *William P. Bragg*, as administrator, and the defendant *William M. Glascott*, bring this appeal.

The statute of this state prohibits the revocation of a will, " unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it," or by the execution of some other will, codicil, or other writing as therein prescribed, " excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." Sec. 2290, Stats. 1898. " Revocation implied by law," thus excepted out from the operation of the prohibitory clause of this section, manifestly means such as had previously been implied at common law. *Will of Ward*, 70 Wis. 255. There can be no doubt but that, at common law, the marriage of a man, and issue of such marriage, operated to revoke his will previously made, disposing of all his property, as here. *Christopher v. Christopher*, 2 Dickens, 445; *S. C.* 4 Burrow, 2182, and note; *Spraage v. Stone*, 2 Amb. 721; *Brady v. Cubitt*, 1 Doug. 31; *Lancashire v. Lancashire*, 5 Term, 49, 58; *Marston v. Fox*, 8 Adol. & E. 14, 55; *Israell v. Rodon*, 2 Moore, P. C. 51. The earlier cases seemed to go upon the theory that such marriage and birth raised a mere presumption of an intent to revoke, but the rule held in the later cases was finally confirmed in the Privy Council in the last case cited, where it was expressly held that " marriage and birth of a child do not afford presumptive evidence of intention to revoke, but are in themselves an absolute revocation of a will made previous to the marriage but not in contemplation of it; the rule being that there is a tacit condition annexed to the will that at the time of making it it should not have effect provided the deceased have a wife, and child subsequently born." Mr. Schouler adopts the same

view, and declares that "the common-law tribunals . . . solemnly decided that the principle was one of legal inference, independently altogether of what the party himself might have intended." Schouler, Wills (2d ed.), § 425. See, also, *Baldwin v. Spriggs*, 65 Md. 373.

It follows from what has been said that, had *William M. Glascott* been the child of the deceased, Archibald Glascott, and his wife, Alice A., by birth instead of adoption, then such marriage and birth would have worked a complete revocation of the will. The question recurs whether under our statute such adoption is equivalent to such birth, for the purpose of implying such revocation. It is conceded that the child was adopted as prescribed by the statutes. Secs. 4021–4024, ch. 173, Stats. 1898. The last section of that chapter declares the effect of such adoption, as follows: "A child so adopted *shall be deemed*, for the purposes *of inheritance and succession* by such child, custody of the person and right to obedience by such parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children the same to all intents and purposes as if the child had been born in lawful wedlock of such parents by adoption, *excepting* that such child shall not be capable of taking property *expressly limited* to the heirs of the body of such parents." Sec. 4024. The language and meaning of this provision of the statute seem to be as explicit as words can make them. "For the purposes of inheritance and succession by such child" he was to be deemed in law as if he "had been *born in lawful wedlock* of such parents by adoption." "In law," the word "inheritance" is defined to be "the estate cast upon the heir by law immediately on the death of the ancestor; in a more general sense, any property passing by death to those entitled to succeed." Cent. Dict. "That which is or is to be inherited. . . . Whatever is transmitted by descent or succession." Standard Dict. The word succession is defined to be: "The act or right of legal

Glascott vs. Bragg and another.

or official investment with a predecessor's office,. dignity, *possessions*, or functions; also the legal or actual order of so succeeding, or that which is or is to be vested or taken." Standard and Century Dictionaries. The statute quoted goes further, and declares that the "custody of the person and right to obedience by such parents by adoption, and all other legal consequences and incidents of the natural relation of parents and children," "shall be deemed" in law to be "the same to all intents and purposes as if the child had been *born in lawful wedlock* of such parents by adoption." To emphasize such declaration, the remainder of the section deprives the natural parents " of all legal rights whatsoever respecting such child," and frees the child " from all legal obligations of maintenance and obedience to such natural parents." As to the matters covered by the statute, its obvious purpose is that such child shall be deemed in law as if "born in lawful wedlock of such parents by adoption," "excepting that such child shall not be capable of taking property expressly limited to the heirs of the body of such parents." "It is a universal rule of construction, founded in the clearest reason," said BLACK, C. J., "that general words in an instrument or statute are strengthened by exceptions and weakened by enumerations." *Sharpless v. Philadelphia*, 21 Pa. St. 161; *Webster v. Morris*, 66 Wis. 395; *Chicago, M. & St. P. R. Co. v. Hoyt*, 89 Wis. 324. The exception in this statute has that effect.

The cases cited by counsel in support of the judgment of the trial court, from New York, Indiana, and California, were each under statutes widely and radically different from our statute in question, and, of course, they are not authority in the case at bar. In a recent case in Iowa those cases are considered, and the difference in the statutes of that state and those other states referred to, and it was held that "the adoption of a child by a testator operated as a revocation of a previously executed will." *Hilpire v. Claude*, 109

Glascott vs. Bragg and another.

Iowa, 159. The statute of Iowa is much more like our own than the statute of any of the other states mentioned, but it is not as strongly in favor of the adopted child as our own. Being a matter of statute, significance must be given to the language of the statute. This court has held that such statutes are to " be liberally construed in favor of children." *Parsons v. Parsons*, 101 Wis. 76. In a case of voluntary settlement, it was held in Massachusetts, under a statute similar to ours, that the adopted child took under the settlement, the same as if he had been born to the adopting parents in natural wedlock. *Sewall v. Roberts*, 115 Mass. 262. So in that state it has been held that " a child by adoption is 'issue,' within the meaning of " their statute, " which provides that if the husband dies intestate leaving ' no issue living' his widow shall take his real estate in fee to an amount not exceeding $5,000 in value." See, also, *Burrage v. Briggs*, 120 Mass. 103.

We must hold that the marriage of the testator and the adoption of the child operated to revoke the will previously made.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to affirm the judgment of the county court, and for further proceedings according to law.

On December 17, 1901, an order was made allowing to respondent taxable costs out of the estate.