WILL OF WEHR: WEHR (EDWARD R.) and others, Proponents, Respondents, vs. WEHR (ALBERTA D.), Contestant, Appellant.

*March 14—May 15, 1945.*

For the appellant there were briefs by *Miller, Mack & Fairchild* and *Arthur W. Fairchild* and *J. Gilbert Hardgrove*, all of Milwaukee, attorneys, and *Joseph E. Davies* and *Davies, Richberg, Beebe, Busick & Richardson*, all of Washington, D. C., of counsel, and oral argument by *Mr. Hardgrove*.

For the respondents Edward R. Wehr and C. Frederic Wehr there were briefs by *Olwell & Brady,* attorneys, and *Bernard V. Brady* and *James N. Johnson* of counsel, all of Milwaukee, and oral argument by *Mr. Johnson.*

For the respondents Harry Nacey, Jr., John Nacey, Martin Wales, Robert Wales, and Alice Wales there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Louis Quarles* of counsel, all of Milwaukee, and oral argument by *Mr. Quarles.*

WICKHEM, J.   There are no issues of fact in this case. William E. Wehr executed a will on March 10, 1937. He was

then a widower without issue. He had four brothers and two sisters and the will made provision for two of the brothers and the two sisters. On August 15, 1938, he married Alberta D. Wehr, who is the contestant and appellant. He died on August 24, 1944, three brothers, a sister, and his widow surviving him.

The contention of the widow is that in Wisconsin the will of an unmarried man having no issue is revoked by his marriage, particularly in view of the rule which makes the widow the sole heir of her husband in the event of his death without issue. Appellant, in support of this contention, first takes issue with the claim of respondents that there ever was a rule at common law contrary to her contention here. The English cases are elaborately briefed by appellant, and it is sought to be demonstrated that in no cases where the matter was directly involved did a court ever state that the will of an unmarried man having no issue was not revoked by marriage. There is a measure of truth in this analysis. What the cases hold is that marriage plus the subsequent birth of a child does revoke the antenuptial will of a man who at the time of his marriage had no issue. However, it must be said, (1) that there is no English case holding that marriage alone under such circumstances does accomplish a revocation; and (2) that it is almost necessarily implied by the cases holding that marriage plus the subsequent birth of a child does revoke a will that nothing short of this is effective. Further than this, at least one case prior to the Revolution makes a statement contrary to appellant's position: In *Shepherd v. Shepherd* (1770), 5 T. R. 51, 54, the court says:

"Upon the whole, therefore, I am of opinion, 1st, That a a will is revoked by subsequent marriage and issue. 2dly, That marriage alone, or birth of children alone, is not sufficient to operate a revocation."

Appellant, in her analysis of the *Shepherd Case, supra,* asserts that it is not in point on the facts and that the state-

ment was only *dictum*. However, the absence of any declaration that marriage alone would revoke, plus *dicta* to the effect that it does not have such an effect is of more than passing importance. Certainly, the opinion of the bench and bar has been that the common-law rule was in accord with the statement in the *Shepherd Case*. Chancellor KENT in *Brush v. Wilkins*, 4 Johns. Chancery (N. Y.), 506, after a review of the English cases, reached the conclusion that the following was the settled rule of the English common law as early as 1775:

"That *marriage* and a *child*, taken together (though neither of them taken separately was sufficient), did amount to an implied revocation."

This statement is repeated in 4 Kent's Commentaries (14th ed.), pp. 521, 522. Hence, the best that appellant can establish is that it was not directly held in so many words in a case involving mere marriage that that circumstance was not sufficient to revoke a will. However, the rule laid down by the trial court was established by implication, stated in *dicta,* and understood to exist by the bench, bar, and legal writers.

Appellant's next argument is much more difficult to meet and we shall try to state it as accurately as possible. It is that assuming there was a common-law rule that marriage alone would not revoke a will in the circumstances involved here, the rule had its foundation in the fact that the wife, so far at least as the real property of the husband was concerned, had no heritable interest until the birth of a child; that the rule that marriage plus birth of a child revoked the will had its foundation in a change of circumstances creating new heritable rights, as well as new moral and legal obligations, this being considered enough, (1) to warrant the assumption that testator, had he adverted to the matter, would have changed his will; and (2) to call for a rule of law based on the equities of the situation treating the new circumstance as effecting a revocation. On the point that the rule depends upon this

principle, appellant relies on *Will of Battis,* 143 Wis. 234, 239, 126 N. W. 9, to the effect that the rule that changes in conditions and circumstances of testator revoke the will or part thereof by implication "rests on the idea that the changed condition and circumstances of the testator respecting his property, his family, or beneficiaries, imposing different moral and legal duties, affords strong evidence that the testator intended that his will should become revoked as to the provisions affected by such subsequent change in the testator's condition and circumstances." From this premise appellant argues that implied revocation can never, as respondents claim, be governed by a fixed rule of common law unchangeable except by legislative enactment; that in its very nature the implication must shift with the creation of new and important property rights in persons with whom the testator subsequently enters into marital or parental relationships. From this appellant concludes that when in Wisconsin husband and wife, in the absence of issue, were made heirs of each other, that was such a fundamental change in property rights; such a radical increase in the rights of the wife; such an enlargement of the legal and moral obligations of the husband as to bring into operation an implication of revocation.

Respondents reply that in this country statutes generally secure to the wife, regardless of the birth of issue and of the terms of any will by her husband seeking to exclude her, a specified share of her husband's estate; that in consequence there is no occasion to imply a revocation or to hold one as a matter of law since the widow is protected by legislation to the extent that public policy considers that she should be protected. It is further insisted that the common-law rule could not have been founded upon the principle asserted by appellant since the wife at common law prior to the birth of a child had dower rights and a heritable right in personal property—something that is of much more importance in modern times than an interest in real property. This controversy is

not new and there has arisen a conflict of authority in this country in respect of it. From our examination of these authorities, it is clear that the great weight of authority has been against appellant's position. *Hulett v. Carey,* 66 Minn. 327, 69 N .W. 31, 34 L. R. A. 384; *Hoy v. Hoy,* 93 Miss. 732, 48 So. 903, 25 L. R. A. (N. S.) 182, 17 Ann. Cas. 1137; *Hoitt v. Hoitt,* 63 N. H. 475, 3 Atl. 604, 56 Am. Rep. 530; *Goodsell's Appeal,* 55 Conn. 171, 10 Atl. 557; *Bowers v. Bowers,* 53 Ind. 430; *In re Adler's Estate,* 52 Wash. 539, 100 Pac. 1019; *Vanek v. Vanek,* 104 Kan. 624, 180 Pac. 240; *Herzog v. Trust Co.* 67 Fla. 54, 64 So. 426, Ann. Cas. 1917, 201; *Fleming v. Blount* (1942), 202 Ark. 507, 151 S. W. (2d) 88; *Scherrer v. Brown,* 21 Colo. 481, 42 Pac. 668; *Tyler v. Tyler,* 19 Ill. 151; *Teopfer v. Kaeufer,* 12 N. M. 372, 78 Pac. 53, 67 L. R. A. 315.

It is our conclusion that, as a matter of principle, appellant is right that the rule of the common law is not so fixed as to be within the constitutional protection of sec. 13, art. XIV, Const.; that being a rule of implication, it is necessarily one in which changes of circumstances can change specific applications of it. It should be pointed out, however, at this stage, that whatever application of the rule to specific situations has been made must be held to be an important rule of property and one that should not be disturbed unless clearly wrong. *Bucher v. Cheshire R. Co.* 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; *Wisconsin Power & Light Co. v. Beloit,* 215 Wis. 439, 254 N. W. 119; *State ex rel. Gisholt M. Co. v. Norsman,* 168 Wis. 442, 169 N. W. 429; *Will of Butter,* 239 Wis. 249, 1 N. W. (2d) 87.

This is a field in which the greatest issue at stake is that of certainty. The testator in the instant case could have drafted a new will the day after his marriage cutting his widow down to her statutory rights, or giving her all of his property. The only question is what happens when he did not bother to do this. It is a situation in which it is a great deal more im-

portant to have a certain and understandable rule than to have one that appears to be logically more sound. Hence, before going any further into the merits of appellant's contentions we ought to examine the claim of respondents that a rule contrary to appellant's position has been established in this state and has become a rule of property. If it has and is not clearly and undisputably wrong, it ought not to be changed by this court. We proceed, therefore, to a consideration of the Wisconsin cases.

We start with the case of *Will of Ward,* 70 Wis. 251, 35 N. W. 731. This case involves a will made by a woman. While testatrix was the wife of one Spaulding she made a will giving her property to six of her children by a former marriage. She had no children by Spaulding and after his death she married Ward and had no children by him. This court held that the marriage to Ward did not revoke the will of testatrix. The court recognized the fact that at common law the marriage of a woman was a revocation of her will previously made except in those cases where her right to disposition of property after marriage was preserved by an antenuptial agreement. The court states that the common-law rule was based upon the husband's marital rights, the ambulatory character of a will, and the disability of a wife at common law in respect of her property. Since our statutes preserve to married women the freedom of disposition of property formerly preserved only by agreement, the court held that there was no reason why the same result should not follow as to revocation that would have followed at common law had there been an antenuptial agreement preserving the right to dispose of her property. This case gives support to appellant's position that if property rights are sufficiently changed, rules as to implied revocation may change to conform to the new circumstances. Since testator had children by a former marriage the court expressly reserved the question raised upon this appeal. In

*Will of Lyon,* 96 Wis. 339, 342, 71 N. W. 362, a woman had made her will, later married, and died without issue. The question was whether the marriage was effective to revoke her will. It was argued to the court that by reason of the fact that a husband and wife were heirs of each other, marriage alone revoked the antenuptial will. Citations were made to an Illinois case which followed the minority rule, and the issue was squarely tendered. The case was decided upon the reasoning in the *Ward Case, supra.* It was held that marriage did not revoke the will because of statutes in Wisconsin removing the inequality of the sexes in respect of disposition of their property after marriage. The court treated a contention similar to that made by appellant here as immaterial, but, of course, that could hardly be true if the court found merit in it, since in that case the husband should take on the basis of an implied revocation.

The court stated that while in England and many of the states the whole subject of revocation is dealt with by statute to the effect that marriage subsequent to the will revokes it, "Judicial decisions in such jurisdictions furnish no authority here, where the common law still prevails, except as changed by implication in the manner heretofore indicated." The case constitutes at least a mild rejection of appellant's contention, and failure of the court to apply the rule contended for where it plainly would apply if valid, is entitled to considerable force. Of course, there is a difference in degree between the will of a husband and that of a wife, since the husband has more obligations with respect to support and maintenance than the wife. But the difference is not one of kind.

In *Glascott v. Bragg,* 111 Wis. 605, 87 N. W. 853, a man made his will, later married. He and his wife thereafter adopted a child and it was claimed that the will was revoked by his marriage and adoption. The court held that since the statutes put the adopted child on the same basis as a natural

child, there was a situation comparable to that at common law where a man married and had issue and the court treated this as a revocation. Appellant cites this case as one recognizing a new circumstance as effective to accomplish a revocation. In this view appellant is correct. The court indicates that a change of circumstances may result in revocation, even though it is not one of the specific changes recognized at common law. However, it must be added that if the court had been willing to recognize a contention identical with that urged by appellant here, there would not have been any need to concern itself with the analogy between a natural child and an adopted child because the will would have been revoked prior to the adoption. In the *Glascott Case* the briefs of the parties indicate that the question involved here was specifically raised. The matter having been argued to the court and being germane to the issue, the court impliedly repudiated the rule argued for by appellant, although the result in this case, as well as in the *Ward, Lyon,* and *Battis Cases, supra,*—namely, the recognition of new circumstances as expanding the rule of the common law,—does support appellant's view that the common-law rules as to revocation are not necessarily fixed.

*Gailey v. Brown,* 169 Wis. 444, 171 N. W. 945, was a case where testator domiciled in Illinois, made a will, married, and died without issue. The law of Illinois was that under such circumstances the marriage revoked the will. Testator left real estate in Wisconsin, and after holdings in the Illinois courts to the effect that the man died intestate, proceedings were instituted for probate of the will in Wisconsin. The court addressed itself at the outset to the question whether the law of Wisconsin or that of Illinois was to govern. It was argued to the court in appellant's brief that contrary to the law of Illinois, "It is the law of Wisconsin that marriage alone does not revoke a prior will; that it requires marriage and the birth of a child," citing the *Lyon* and *Glascott Cases, supra.* The court referred to and considered sec. 2290, Stats.,

as then numbered, now sec. 238.14, which provides the manner in which wills may be revoked and concludes as follows:

" . . . Excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. The power to make a will implies the power to revoke the same."

The court made the following comment (p. 448):

"In *Glascott v. Bragg,* 111 Wis. 605, 87 N. W. 853, it was held that at common law marriage of the testator and birth of a child operated in Wisconsin to revoke a will made prior to such marriage and not in contemplation thereof. This interpretation of our statutes excludes the idea that marriage alone, as the Illinois statutes provide, shall be deemed a revocation of a prior will."

The ruling in the *Gailey Case, supra,* is important in two respects: (1) The court construed the *Glascott Case, supra,* as excluding the idea that marriage alone, as is the case in Illinois, is effective to revoke a prior will; (2) it directly and authoritatively held in accordance with the rule attributed by it to the *Glascott Case.* The *Gailey Case* was one in which the court, if it so desired, could have reserved a ruling upon the contention made by appellant in this case and proceeded to limit its holding to the conflict-of-laws question involved. It did not do so. It expressly ruled on the revocation point contrary to appellant's contention. This ruling was germane to the issues involved, and the points involved in it were argued to the court. The court deemed a determination upon it essential in order to make material the conflict-of-laws questions alternatively involved. From an analysis of the foregoing cases we consider that this court has recognized the principle argued for by appellant, that there is not a fixed common-law rule in respect of revocation, and has several times held that important changes in family circumstances may operate im-

pliedly to revoke wills not revocable at common law by reason of the same circumstances, and in some cases, for example, those involving the marriage of a single woman, has held that the acquisition of new rights may operate to repel an implication of revocation recognized at common law. On the other hand, it has held by *dictum* in at least one case, and by direct holdings in two others, that statutes making the wife the heir of the husband, and the husband the heir of the wife in the absence of issue have not so changed the relationship of the parties as to result in the revocation of the will by marriage. In this connection, see *Chase v. American Cartage Co.* 176 Wis. 235, 238, 186 N. W. 598, where it is said:

"It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision."

In other words, while recognizing the general principle asserted by appellant, it has refused to make the specific application of it here demanded. In doing so, it has followed the majority rule in this country; a rule based in part on the fact that sufficient protection to the wife has been given by statutes securing a portion of his estate to her regardless of his will, and in part upon the opinion that the real basis of the common-law rule was that the wife did have dower rights and certain rights in personalty, even under the common-law rules of property, and that the modern changes are not so fundamental as is asserted by appellant. We consider that the rule laid down by this court is not clearly wrong, and since it is established by the weight of authority in this country and has existed in this state for many years, it must be considered a rule of property and ought not to be changed by this court.

Appellant's next contention is that the effect of marriage as a revocation of the will is to be determined by the law of

the place where the marriage takes place. In this case testator was married in Reno, Nevada. In applying for a marriage license he recited that both parties were residents of Nevada. It is conceded by appellant, however, that there is evidence to sustain the trial court's finding that testator was domiciled in Wisconsin at the time of his marriage, as well as of his death, and that that finding may not now be successfully attacked. The statute of Nevada applicable to the situation is as follows :·

"§ 9914. *Effect of marriage on wills.—When deemed revoked.* § 10. If, after the making of any will, the testator shall marry, and the wife shall be living at the death of the testator, such will shall be deemed revoked unless she shall be provided for in the will, or in such way mentioned therein as to show an intention not to make such provision, and no other evidence to rebut the presumption of such revocation shall be received."

It is claimed by appellant that the effect of marriage in a sister state is controlled by the law of the place where the marriage occurs rather than by the place of domicile, either at the time of marriage or at the time of death. We cannot agree with this contention. It is well established that whether circumstances subsequent to the making of the will constitute a revocation is determined as to real estate by the law of the state where the real estate is situate, and as to personalty by the testator's domicile on the day of his death. *Moultrie v. Hunt,* 23 N. Y. 394; *Lewis v. Corbin,* 195 Mass. 520, 81 N. E. 248; *Barnes v. Graves,* 259 Ky. 180, 82 S. W. (2d) 297. In *Gailey v. Brown,* heretofore cited and discussed, this court went further and held that as to a testator domiciled in Illinois at the time of his death, the law of Illinois determined whether his marriage revoked his will, even though the will affected the title to lands in Wisconsin. From this it appears that Wisconsin has gone further than the general rule in rejecting appellant's contention. We are clear that the Nevada statute is not helpful to appellant. According to the plain terms of

that statute, the revocation is not effective until the death of testator and is conditional upon the survival of the wife and failure to make provision for her in the will or otherwise to show intention not to make such provision. Since this statute can have no extraterritorial effect, it can only apply to the will of a testator who is domiciled in Nevada at the time of his death.

Appellant's next contention is that there was a mutilation of a conformed copy of his will by testator and that this accomplished revocation by mutilation under sec. 238.14, Stats. The conformed copy in question was especially prepared for the use of testator and retained in his personal custody, the original of the will having been left with the lawyer who drafted the will. The mutilated copy was one of two conformed copies, the second of which was retained in possession by the draftsman who had possession of the original. The conformed copy was kept in a roll-top desk used by testator in the transaction of business affairs, and it was found in a small pigeonhole, together with the original and a conformed copy of an earlier will. The conformed copy was in the original envelope in which it had been sealed but the envelope had been torn open at some time. The original and conformed copy of the earlier will were mutilated by cutting with a shears the signature on the original and the copy of the signature on the conformed copy of the will. The conformed copy of the will offered here for probate was likewise mutilated except that it appeared to have been done by tearing out the section bearing the copy of the signature. It is clear enough that if this had been a duplicate, a destruction of it would generally be held to create a rebuttable presumption of intent to revoke the will. *Estate of Bates,* 286 Pa. 583, 134 Atl. 513; *Managle v. Parker,* 75 N. H. 139, 71 Atl. 637, 24 L. R. A. (N. S.) 180; *Crossman v. Crossman,* 95 N. Y. 145; *In re Walsh's Estate,* 196 Mich. 42, 163 N. W. 70. There is no authority whatever to the effect that destruction or mutilation of a copy

of the will, conformed or otherwise, is effective to accomplish a revocation. There is no room in the language of sec. 238.14, Stats., for construction broad enough to include a copy of the will. Sec. 238.14 provides:

"No will nor any part thereof shall be revoked unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator or by some person in his presence and by his direction. . . . "

It seems to us that to hold that a mutilation of a conformed copy was a revocation would be to interpolate or add to the statute what plainly is not there or to establish a symbolic revocation by judicial decree in the face of a statute which plainly does not mean to recognize it. Further than this, it may be observed that there is no testimony as to any acts of testator with respect to the conformed copy. The copy was found by appellant in the desk after testator's death and we have no information as to who did the tearing. There is no proof that the desk was locked or that the papers were not open to numerous other persons, and we should regard it as far from established that testator mutilated the conformed copy. However, in any event, the destruction of the copy would not be effective, even had the testator mutilated it. The foregoing conclusions require affirmance of the judgment. In this connection it should be noted that while the parties have referred to the court's determination as an order, it is in fact a judgment.

*By the Court.*—Judgment affirmed.