Opinion of the Court, by
Chief Justice Boyle.
In the year 1791, John Dunlap made and published his last will, which contained the following clauses. — “I will to my daughter Jane, one negro girl, named Nan, and issue, also one mulatto boy named Jack, until he is of the age of twenty-six years; and in that time, to be learned the art and mystery of shoe-maker, and to he 1 aught to, read, *200 and when he comes to the age mentioned, then to be free; or at liberty to work or labor for himself;—also, one horse and saddle, and one cow; also, I will to my daughter Cynthia Kid, one negro boy named Captain, one named Monday, also, one negro wench named Jude, and issue, also one named Emmy, and issue, also one named Fanny; also one horse and saddle, bed and furniture, two cows, and one third of the household furniture; and if one of my daughters should die before the other, leaving no issue, I will that the part willed to her should go to the use and benefit of my other surviving daughter, and if both should die without issue, then I will that my beloved wife should enjoy the property willed to them, during her life, and at her death, leaving no lawful issue, then I will that said property be equally divided between sister Isabella Howe, and sister Jane Howe’s children.”
Statement of the facts.
Decision of the circuit court on the agreed case.
After the testator’s death the will was duly admitted to record in the county court of Bourbon county, where he died, and his wife who was appointed his executrix, took upon herself the execution of the will. His daughter Cynthia Kid, died in the lifetime of the testator, unmarried and childless. His daughter Jane, survived the testator, but afterwards died unmarried and childless, and by her will bequeathed all her estate, with the exception of some inconsiderable legacies to her mother, the wife of the testator, who has since died and after her death the appelants as trustees for certain purposes in her will mentioned, took possession of the slaves, or some of them, and their descondents, devised by the clause of the testator’s will before recited, to his two daughters. To recover the possession of those, slaves the appellees, being the cnildren of the testator’s two sisters, Isabella and Jane Howe, brought their action of detinue against the appellant.
On an agreed case, comprising amongst others, the foregoing facts, the circuit court gave judgment for the appellees, for certain slaves in the agreed case mentioned, and the appellants have brought this case, by an appeal, to this court.
Power of disposing of our estates after our death, is not by natural law, but is one of the positive institutions of society.
Here no person can control his estate real or personal longer after his death, than for lives then in being, and for 21 years and some months afterwards.
As the appellees, who were plaintiffs in the circuit court, claim title to the slaves in question, in virtue of the devise over to the testator’s sister, Isabella Howe and his sister Jane Howe’s children, it is plain if that, or either of the preceding devises over be void, that their right to recover cannot be sustained. Whether those devises, or either of them, be void or not, depends upon the power of the testator to make them, and the construction which shall be given to them.
Naturally, no man has a power of directing to whom or in what manner his estate shall pass after his death, for when he ceases to be, his power necessarily ceases with him. His power, therefore. in this respect must depend upon the positive institutions of society. To stimulate to industry and economy, and to enable parents to exert a beneficial influence over their children and make such arrangements as may suit the exigencies of their families, the law of this country as well as that of must other civilized nations, has given to every one of competent capacity, the power of directing by will to whom his estate shall pass. But although it is reasonable that a man should have power of thus disposing of his estate after his death, it is obviously as reasonable that he should not have the power of directing its disposition for all time to come; and the law, while, for benificent purposes, it concedes to every one the power of directing to whom his estate after his death shall go, has at the same time been careful that this power should not be abused.
To prevent, therefore, estates from being locked up forever from commercial and social purposes, it has forbidden perpetuities, and fixed a period beyond which no one is allowed to direct how his estate shall devolve. That period is for life, or lives in being, and twenty one years and a few months, and the rule is the same in this country, in relation both to real and personal estate. A man cannot, therefore, devise over an estate to take effect after that period, and if he does so the limitation over will be void, and the person who takes the preceding estate will have the fee simple or abso *202 lute property in the estate devised. Whether the devises over in this case be of that character depends upon the construction to be given to them.
Devise over after the death of the devisee of the particular estate leaving the no issue at her death, is valid.—
-Otherwise, if it be after an indefinite failure of issue after the particular estate determined.
It was not seriously urged in the argument that the first and the last of these devises over were made to take effect upon too remote a contingency to be valid, and indeed it is apparent that there is no reasonable ground to doubt of their validity, for as they are both made to depend upon persons then in being dying leaving no issue, and as the expression leaving no issue, is construed to mean leaving no issue at the time of the death, it is clear that the contingencies on which they were to take effect, must if they happened at all, happen within the compass of lives then in being.
But it was most earnestly contended that the intermediate devise over to the testator’s wife in case both his daughters should die without issue, was made to depend upon a contingency too remote to be valid.
If, as was urged for the appellant, the expression without issue, used in this devise, must be understood to mean an indefinite failure of issue, then as that event was of a character which might not for many successive generations have happened, the devise over must be deemed void; but if, as was contended on the other side, the expression is to be understood to mean, dying without issue living at the time of the death, then it is plain that the devise over must take effect, and, if at all, wihin the allowed period to make such a limitation good. Tne latter of these meanings is certainly much the most common and obvious. The former indeed appears to us to be a very strained and artificial meaning of the expression. According to this meaning, although a man should die leaving issue who afterwards dies, yet he may be said to die without issue. In such a case, as he would be dead and his issue extinct he might, no doubt, with strict propriety, be said to bo dead without issue; but without assigning to the words the most strained and artificial meaning, he could not be said to have died without issue.
In a devise of land—dying without issue imports an indefinite failure of issue, and is not confined to a failure at the demise of the parent—Otherwise, if any circumstance indicate the contrary intention.
In devises of personalty, and of terms for years, the construction is a failure of issue at the death, not afterwards.
Cases cited.
Strained and artificial, however, as such a meaning of the words may be, a majority of the modern cases agree that the expression of dying without issue should be taken to import an indefinite failure of issue unless the contrary appears from other circumstances in the will. But, aware that such a signification of the expression, would, it in all cases adhered to, tend more frequently to defeat than to effectuate the intention of the testator, judges have, with avidity, seized upon any other circumstance in the will to aid them in giving to the expression a different interpretation, by restricting it to mean dying without issue living at the time of the death
This disposition of judges thus to limit the generality of the expression of dying without issue, to dying without issue living at the time of the persons decease, has been more distinctly manifested in relation to bequests over of chattels, than in relation to executory devises of the freehold, and whatever may be the doctrine with respect to the latter, it has now become an established principle in devises or bequests over of terms for years, or personal estate, to limit the expression of dying without issue to dying without issue living at the time of the persons decease, if there be in the will any circumstance to indicate such to be the intention of the testator.
Thus where a term for years was bequeathed to H. for life, and no longer, and after his decease to such of his issue as H should by will appoint, and in case H. should die without issue, then over to A. and H. died without issue living at his death, those words, upon the whole will, were construed to mean issue living at his death, because it was to be intended such issue as H. might by will appoint the term, to, namely issue then living. 1 P. Wms. 482, 3 Saund. 388 (1) note 8. So where the testator pos
sessed of a term for years, devised the land to B., and the heirs of his body, and if B. should die without issue living, then to C. this was held a good limitation to C. the contingency being to arise within the compass of a life in being. 2 Fearn. Remainders 184, 1 Salk. 225. And an appointment by will to A, and if he died without issue under *204 twenty-one, over to others, was held a good limitation by way of executory devise. 1 Wil. 270. So where the testator devised parts of his estate to each of his sons, and if any of his sons should die without issue, directed his part to be divided amongst the survivors, the limitation was held good. 10 John. Rep. 12, and in the ease of Mehalal vs. Skinner, Pre. in Chanc. 528, cited in the preceding case, where there was a bequest of bank shares to four children, and if any should die without issue, his or their share, to go to the survivors, the limitation over was adjudged good.
Intention of the testator controls the signification of particular expressions.
It shall not be supposed the testator attempted to create a remainder against law, but the other construction shall be prefered.
In all these cases it will be perceived that the devises over, are to persons who moust take (if at all) in the period of a life in being, and this being the manifest intention of the testator, it was allowed to control the meaning which otherwise would have been attributed to the expression of dying without issue. Many other cases of like import might be cited in support of the same principle, but it is unnecessary to be done. The principle is itself intrinsically correct, and does not need the aid of authority to support it.
Whether a man can make a devise over, to take effect after an indefinite failure of issue, is a question of power; but whether a devise is of that character, or not, is a question of intention, and the expression of dying without issue, has been construed to mean an indefinite failure of issue, only because it was supposed when taken alone, to indicate such to be the intention of the testator; but when the devise over must take effect, if it takes effect at all, in the life of a per on in being, it is plain that to construe the expression to mean an indefinite failure of issue, would be inconsistent with the intention of the testator, and to effectuate that intention, therefore, the expression of dying without issue, ought, and must, in all such cases, be construed to be a dying without issue living at the time ot the death on which the devise over is made to depend. This principle applies to, and must govern the present case; for the devise over here after the death of the testator’s daughters, is in express words, that *205 "his wife should enjoy the property willed to them during her life.”
The words and leaving no lawful issue, held to be here a contingent devise by implication to the children—But as they take by purchase, their mother’s estate is not enlarged.
Issue may be a word of either purchase or limitation.
Where there is an express devise or life, and then a devise over to the children, they take by purchase, not representation.
*205 But it is contended that the subsequent words, "and at her death leaving no lawful issue,” gives her, notwithstanding the express devise to her for life, an estate in fee, by implication, and that consequently, although she had died before her daughter, if she had left issue, the issue would have taken under the devise, and as the devise might thus take effect after her death, the principle we have mentioned does not apply.
The words "and at her death leaving no lawful issue,” ought we are inclined to think to be construed to be a devise to the issue by implication; but we cannot admit that they ought to operate to enlarge the estate of the wife and thereby vest in her an absolute property or fee simple estate, and if they cannot so operate, the issue, if they had taken, must have taken by purchase, not by descent or representation.
Issue is a word of purchase, as well as a word of limitation, and it may be construed to operate in the one way, or the other, according to the intention with which it is used, and in executory devises of personal estate, slight circumstances have been considered as sufficient evidence of an intention to use it as a word of purchase, and not of limitation. Even the words “leaving no heirs of the body” or "leaving no issue,” the precise words employed by the testator in this case, have been in themselves held to manifest an intention that the issue should take by purchase, and not by descent. 2 Fearn. 305-306 and 307. But such an intention in this case is not only indicated by the words “leaving no issue,” but by the language employed by the testator in the devise to his wife, for the expression that she should enjoy the property during her life, not only emphatically limits her estate for life, but moreover, seems strongly to imply that she should have nothing more than an usufructuary interest in the property.
We are aware of no case of an executory devise of personal estate, where the devise is thus express *206 ly made for life, and no express devise over to the. issue, in which it has been determined that the issue should take by representation, instead of taking by purchase, and we may venture to say that no case of the kind, unless very peculiarly circumstanced, can be so determined without a total disregard of the intention of the testator.
Devise over in fee after two life estates sustained.
An agreement that if the law be for plaintiff, on the agreed case, judgment shall be for him, but no execution should issue, it seems must be made a part of the judgment.
Assuming it then, that the wife of the testator must take, if at all, by the devise over to her after the death of her daughters during her life, it is perfectly clear that the testator could not have intended by the expression without issue, an indefinite failure of issue, and consequently for the purpose of effectuating the intention of the testator, that expression must be restricted to a dying without issue living at the time of the death of the daughters.
It follows, therefore, its the devise to the wife was to take effect within the compass of lives in being, that the limitation is a good one, and of course, that the plaintiffs have a right, under the devise to the sisters of the testator.
Several other points are made by the appellants, but they involve no principle new or important, and are evidently untenable, except one in relation to the irregularity of entering the judgment. Two of the slaves sued for John and Jacob, were admitted not to be in the possession of the defendants, and it was agreed if the law should be for the plaintiffs, that judgment might be entered for those slaves but that no execution should be issued for them; but the judgment is entered for them without any direction that no execution shall be issued, and the defendants are, therefore, liable, contrary to their agreement, to an execution for those slaves as well as the others.
The judgment must be reversed, with costs, and the cause remanded that a judgment may be entered as heretofore, but with directions added thereto, that no execution shall be issued for the slaves John and Jacob.