## Barnes et al. v. Graves et al.

(Decided May 7, 1935.)

BEN F. WASHER and ROBERT C. LOGAN for appellants.

TRABUE, DOOLAN, HELM & HELM, GORDON, LAURENT & OGDEN, THOS. J. WOOD and COLEMAN AVERY for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Judge T. Bate died testate a resident of Louisville, Jefferson county, Ky., in January, 1898. That part of his will, which is the subject of this controversy, reads as follows:

"The remainder of my property real and personal, I give to my son, Clarence S. Bate, during his natural life and no part of it shall be subject to any debts that he may have and at his death it shall go to such of his children as he may designate by will or if he should die without making a will, then to be equally divided among his children. * * *"

Clarence S. Bate had four children, all of whom were born and living at the date of the death of John T. Bate, their grandfather.

Clarence S. Bate died in April, 1898, leaving a will, the pertinent part of which reads as follows:

"* * * Therefore after paying all my father's debts, I desire the remainder of his lands and personalty to be equally divided among my children, Octavius L. Bate, John Throckmorton Bate, Octavia Z. Bate and Clarence S. Bate—with this provision—the part falling to Octavius L. Bate I leave in trust

to Octavia Z. Bate and John T. Bate my son and daughter, who shall manage it as best they can, giving to him the rentals or if they should sell his property and invest in bonds or other realty—the profits in the way of interest or rents they shall alone pay to him during his life and at his death if he have lawful children, then his part shall go to such children, but should he die without lawful issue then he can designate by will, whom of his sister or brothers he desires, to inherit his portion but should he die without such designation, then his portion to be equally divided between his sister or brothers.''

To avoid possible confusion in the similar names in this record, it may be well to note that John T. Bate, the original testator and donor of the power, is designated in the record as John T. Bate and Clarence's son bearing the same name, who is a grandson of John T. Bate, is designated John T. Bate II, and John T. Bate II has a son bearing the same name, and he is designated as John T. Bate III. It will be further noted that John T. Bate II is a grandson of John T. Bate, and John T. Bate III is a grandson of Clarence Bate or a great-grandson of John T. Bate. Clarence Bate's son, John T. Bate, died many years ago, single, without issue, and John T. Bate II died in 1919, leaving two children, John T. Bate III and Margaret Bate Barnes, who are the appellants herein. It will be further noted that at the time of the death of Octavius L. Bate, the appellee Octavia Z. Bate Graves was the only surviving child of Clarence Bate, and the appellants John T. Bate III and Margaret Bate Barnes were the only living issue of the deceased children of Clarence S. Bate.

In accordance with the provisions of the will of Clarence S. Bate, one-fourth of the estate left to Octavius L. Bate by his father, Clarence S. Bate, was set apart and held by Octavia Z. Bate and John T. Bate II as trustees; Octavia Z. Bate removed from the state and married a Mr. Graves. She was then removed as trustee, and her brother John T. Bate II continued the trust until his death in 1919, when the Louisville Trust Company was appointed trustee, and, acting as such, distributed the income from the property to Octavius L. Bate until his death in March, 1931. Octavius L. Bate had been a resident of the state of Ohio for sever-

al years previous to his death. He died in Cincinnati in 1931 leaving a will dated February 21, 1923. He married in 1927, which was subsequent to the making of his will, and the question whether or not his subsequent marriage revoked the will is involved in this appeal, which question will be discussed later in this opinion.

A controversy arose between appellants and appellee respecting the ownership of the trust estate, and the Louisville Trust Company instituted this suit under the Declaratory Judgment Act, asking for a declaration of of rights of the various claimants. There is no disagreement between the parties as to the facts in the case; the only issue being the legal rights and obligations arising out of the various wills, above mentioned. The chancellor adjudged that Octavia Z. Bate Graves was entitled to the entire fund, and entered judgment accordingly, and from that judgment Margaret Bate Barnes and John T. Bate III have brought this appeal.

For a reversal of the judgment appellants present the following questions:

"(a) Was the exercise of the power of Octavius L. Bate appointing to his sister, Octavia Z. Graves, void under the Kentucky Law of Perpetuities?

"(b) If this power was void, did Octavius L. Bate take a fee, or a life estate? The appointment of Octavius L. Bate being void, is the distribution of the trust estate subject to the provisions of the Will of John T. Bate?

"(c) Insufficient attestation of Will of John T. Bate I.

"(d) Revocation by marriage of the Will of Octavius L. Bate."

It is insisted for the appellants that the terms of Clarence S. Bate's will result in a violation of the Kentucky Law of Perpetuities, section 2360, Kentucky Statutes, which reads:

"The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

Appellants rely on the case of Brown v. Columbia Finance & Trust Co., 123 Ky. 775, 97 S. W. 421, 422, 30 Ky. Law Rep. 110, and insist that that case is in point to the instant case, and that the interpretation of this court giving the will involved in the Brown Case is conclusive of the present case. Appellee also insists that the Brown Case supports her theory of the case.

In the Brown Case, a tract of land referred to in that opinion as the "Ellerslie tract" was owned by Robert Wickliffe, who devised it in trust for the use of his daughter, Mrs. Preston, during her life, giving to her a power to appoint the same by will to the use of any of her children or descendants, and providing that in default of such appointment it should go to her heirs at law. Mrs. Preston, by her will, exercised this power by appointing the property to her six children, five daughters and one son, for their respective lives, with remainder in fee to their children. All of these six children of Mrs. Preston were born before the death of Robert Wickliffe, the creator of the power of appointment, and were therefore in being at the date the power came into existence by his death. Mrs. Preston died a resident of Fayette county in February, 1898, having theretofore made and published her last will, which was duly probated in Fayette county. Her will recites that it was made in virtue of the power given her by the will of her father, Robert Wickliffe. She left surviving her six children, and no descendants of any deceased children. She devised the "Ellerslie tract" of land and all the residue of her real estate to be divided equally among her children, subject to certain charges against them, respectively, and further provided as follows:

"The real estate given by this will to my children is given for and during their respective lives, and at the death of each shall pass to the heirs of his or her body living at such death, and in the event of their being no such heirs, then pass to my descendants; but each of the devisees shall have full power, by last will, to devise and dispose of the estate received under this will among such devisees' own descendants, or if there are none, then among my descendants at such devisees' discretion."

One of the six children of Mrs. Preston was Mary O. Brown, the mother of John Mason Brown. Mrs.

Brown died a resident of Jefferson county in 1898, having theretofore made and published her will, which was duly probated in Jefferson county. Mrs. Brown left surviving her four children; John Mason Brown being one of the number. After devising certain specific legacies, she devised to the Fidelity Trust & Safe Vault Company of Louisville all of her property and estate in trust to be held by it, as trustee, and the net income thereof to be paid to her children. After setting out in detail how the trust funds were to be distributed among her children, there appears the following clause in the will:

"This trust shall continue as to each child during his or her life. Upon the death of the first of my children who die, one-fourth of the principal of my estate, shall be paid to his or her issue. If there be no issue, then the entire estate shall remain in trust. Upon the death of the second child a one-third portion of the principal of the trust property as then existing shall be paid to his or her children, or issue, if any; if no issue to remain in trust. Upon the death of a third child a one-half portion of the remaining trust property, as then existing, shall be paid to his or her children or issue, if any, if no children or issue then it shall remain in the trust. I desire my fourth and last surviving child to make whatever disposition they choose of my property."

Following the above quotation of the will, the opinion in that case, Judge O'Rear writing for the court, said:

"The question for decision, therefore, is what estate has John Mason Brown in the property devised? Is it controlled by his mother's will, or does he take as purchaser under the will of his great-grandfather? Section 2360, Ky. Stats. 1903, reads: 'The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter.' Under this statute, and under the rule against the creation of perpetuities, the validity of any future estate depends upon the certainty of its vesting within the prescribed period, and this certainty

must exist at the time of the creation of the estate. It follows that the estate will be void where this certainty does not exist at the time of its creation, although subsequent events so happen that the estate could vest after that period. It is immaterial whether Mrs. Preston had children born after her father's death. The fact remains that at his death, Mrs. Preston being alive, it was possible that she might have had children born alive thereafter who could have survived her, and who would have taken as members of the class represented by her children. Such after-born child would, therefore, have been one of the persons included in Wickliffe's devise. His daughter had the power of appointment only as among her children, failing which her children, or, as the will says, 'her heirs at law,' would take as remaindermen under the will of Wickliffe.

"To uphold the construction of the will contended for by appellee, and given to it by the circuit court, would be to hold an estate could be created by a will, taking effect at the death of the testator in behalf of one not then in existence for his life, then to his children for life, with remainder to the latter's children. The power of appointment given to the daughter by Robert Wickliffe could not be used to extend the estate created by his will, or to postpone the vesting of the fee for a longer period than Wickliffe himself could have done. The effect of an execution of a power of appointment is to make such act that of the original testator in effect. To hold it valid would be to say that the testator, though restricted by the statute in the capacity to create an estate beyond a life or lives in being and 21 years and 10 months thereafter, could, by a power of appointment, vest in some other person the ability to further extend the limitation, so as to defeat the purpose of the statute against perpetuities. This we hold would be invalid. We conclude that the will of Mrs. Preston was valid only to the extent that it exercised the appointment allowed by her father's will; that is, in designating which of her children took and in what portions after her own death. But the attempted limitation of their estate to a life estate, with remainder to their children, was void. Hence Mrs. Mary O. Brown took the fee to the property

devised to her. She was competent, then, to devise same in her own right. The estate created by her will in her son John Mason Brown is not such as that the title to the land could be disposed of by him by way of mortgage.''

Appellants insist that under the doctrine of the Brown Case, supra, Clarence S. Bate, under the power granted him by his father's will, could appoint to his children only, and his attempted appointment to his son Octavius L. Bate for life, with power to appoint to his (Octavius') children, was void and that the one-fourth interest of the estate was undisposed of by the will of Bate and by the terms of his will it descended to the children of Clarence S. Bate per stirpes, or, according to the will of John T. Bate which provided that in the event Clarence S. Bate failed to dispose of the property by will, it should go to his (Clarence) children equally, and in either event Octavia Z. Bate Graves, who was the only living child of Clarence Bate, would heir one-half of the undisposed of portion of the estate and the appellants, children of John T. Bate II would heir the other half.

The chancellor was of the opinion and so held, that the appointment by Clarence to Octavius was valid, and therefore Octavius was competent to designate by will whom he desired to take the remainder after the termination of his life estate. The chancellor distinguished the present case from the Brown Case on ground that Mrs. Preston's will designated her children as a class which would have included after-born children, and for that reason, in view of the rule that there is a possibility of children so long as a person lives, the estate would not have vested within the time prescribed by the statute of perpetuities; but that Clarence S. Bate's will did not designate his children as a class, but specifically named them, and the children named were entitled to the whole of the estate, and an after-born child would not have taken.

On this point the chancellor who tried the case in the circuit court, said:

''Undoubtedly, if John T. Bate, the testator and donor of the power, had, by his own will, made the same dispositions that were ultimately made in the exercise of the power, by the will of his son

Clarence, and by that of his grandson, Octavius, the limitations would not have been too remote, since every one of the devisees who would have been mentioned in his will, as thus rewritten, was living at his death. In that event, the residuary clause of the will of John would have read as follows:

" 'The remainder of my property, real and personal, I give to my son, Clarence S. Bate, during his natural life, with remainders, in equal shares, to my grandchildren, Octavius, John, Octavia and Clarence, with this provision, that the share of Octavius shall be held in trust for him during his life and, at his death, shall go absolutely to his sister, Octavia.'

"It was possible for the testator to have drawn a will of this kind. What actually happened was that he gave the residue of his estate to his son, Clarence, for life, with remainder to his descendants per stirpes but with power to Clarence to appoint among his children. Clarence appointed equal shares to his children by name, but placed the share of Octavius in trust for his life, with remainder to his children. He, however, gave to Octavius, in default of issue, the power to appoint by will among his brothers and sister. Octavius died without issue and exercised the power by designating his sister, Octavia, the only surviving object of that power, to take the whole share over which he had power of appointment. The ultimate result of the three wills was exactly the same as it would have been, if the will of John had been drawn as stated above."

Had the will of John T. Bate given Clarence S. Bate power to appoint to his children for life with remainder over to their children, the statute of perpetuities would not have been offended, and Octavius L. Bate would have taken the fee under the wills of his father and John T. Bate, his grandfather.

But it must not be overlooked that the question to be determined involves the exercise or construction of a power, rather than the construction of a will. It is our view that this case is controlled by the Brown Case, with respect to the exercise of powers, and, if we are correct in our position, Octavius was vested with the fee. In the Brown Case it was held that Mrs. Preston's will was valid to the extent that it exercised the

appointment allowed by her father's will, i. e., in designating which of her children took and in what portions after her own death; but no further, because to do so would come within the inhibition of the statute of perpetuities and the attempted limitation of their estate to a life estate with the remainder to their children was void, and Mrs. Brown took the fee to the property devised to her and was competent to devise same in her own right. In this respect we are unable to see any distinction between Mrs. Preston's position and that of Clarence S. Bate with respect to the exercise of the power legally bestowed upon them by their respective donors.

Even though it be conceded that the word "children" in Clarence Bate's will, being followed by specifically naming them, does not distinguish this case from the Brown Case, and for that reason the statute of perpetuities was offended, the results would be the same as in the Brown Case, for the very obvious reason that John T. Bate did not authorize Clarence to appoint further than his children; therefore, Clarence had no authority to limit Octavius' part of the estate to a life estate with power to appoint to another. Mrs. Preston's will was held invalid in so far as it purported to devise a life estate to her daughter, Mary O. Brown, with remainder to her children, because Mrs. Preston had no authority to do so under her father's will, and, therefore, her devise to Mary O. Brown resulted in the fee. John T. Bate's will went no further than to authorize Clarence to appoint to his children, and, consequently, Clarence had no authority to place any limitations upon the estate of Octavius, and his attempt to do so was void for lack of authority under his power. Thus it will be seen that each case turns upon an attempted unauthorized appointment, and the last authorized appointment (Mrs. Preston's children in the Brown Case and Clarence Bate's children in the present case) resulted in a fee instead of a life estate.

But if it be conceded, for sake of the argument, that Clarence S. Bate's attempted appointment to Octavius L. Bate was absolutely void, or valid to the extent of a life estate only, in either event the residue of the estate would go to the children of Clarence S. Bate equally as directed by the will of John T. Bate, unless it is controlled by section 1407, Ky. Stats., which reads:

"Any real or personal property or money, given or devised by a parent or grandparent, to a descendant, shall be charged to the descendant or those claiming through him in the division and distribution of the undevised estate of the parent or grandparent; and such party shall receive nothing further therefrom until the other descendants are made proportionately equal with him, according to his descendable and distributable share of the whole estate, real and personal, devised and undevised. * * * ,,

It is argued for appellants, however, that the statute, supra, does not apply to the situation here, for the reason, to do so would be to hold that there was a partial testacy, whereas it was the intention of John T. Bate to dispose of his whole estate by his will. It may be conceded that as a general rule the courts do not favor a construction that would result in partial testacy where it is manifested by the terms of the will that a total testacy was intended. However, circumstances may arise which would justify an exception to the rule. It may be conceded that it was the intention of John T. Bate to dispose of his whole estate by his will, but it is equally manifest that in the event Clarence did not make a will the estate should be equally divided among his children. Of course, John T. Bate did not and could not anticipate that Clarence would attempt an unauthorized exercise of the power. It is reasonable to presume that John T. Bate expected Clarence to make a valid will or exercise of the power, in toto, or, no will at all; and, in the latter event there should be an equal division of the property among Clarence's children. But inasmuch as Clarence made a valid will to all of his children except Octavius, the unforeseen situation must be solved by the rules of law applicable thereto and the equities of the parties. We think that the provisions of section 1407 of the statutes are peculiarly applicable, if it be conceded that the property involved does not pass under the appointment made by Clarence to Octavius.

We are constrained to the conclusion, therefore, that in any event Octavius L. Bate was vested with the fee to the property involved, and his devise to the appellee is valid.

It is next insisted that appellee is disqualified under the provisions of section 4836, Ky. Stats., from taking

the fund involved herein because of the fact that she was one of the witnesses to the will of her grandfather, John T. Bate. But since we have concluded that ap- appellee is entitled to the fund under the will of Octavius L. Bate in his own right, that conclusion eliminates this question. But if it be conceded that she was entitled to the fund only under the wills of her father and grandfather, she would not be disqualified to receive it. It will be noticed that no direct interest was willed to her by her grandfather. The only interest devised to her by the will which she attested was a remainder interest upon the death of her father, Clarence, which interest was subject to be defeated by the exercise of the power given to Clarence. Under Clarence's power derived from the will of his father, he was not bound to give appellee any part of the estate. Clarence had the right to devise it to such of his children as he may designate by will. The statute relied on provides that where the will can be proved only by the testimony of a person to whom beneficial interest in the estate is devised or bequeathed, the witness shall be competent but the gift void. John T. Bate's will was attested by other witnesses, and its proof did not depend wholly upon appellee as an attesting witness. The rule is that the statute does not apply to holographic wills, so that a beneficiary loses nothing by testifying on probate if the instrument is wholly in the testator's handwriting. McNamara v. Coughlin, 159 Ky. 810, 169 S. W. 555; Harl v. Vairin's Ex'r, 175 Ky. 468, 194 S. W. 546. As to nonholographic wills, the rule is that, although a beneficiary's testimony has been given to prove the will, he will not lose his benefits on that account, if the will could have been established by other testimony, i. e., by the testimony of another attesting witness. Doyle v. Brady, 170 Ky. 316, 185 S. W. 1133; Cromwell v. Stevens, 212 Ky. 209, 278 S. W. 555; Calvert v. Calvert, 208 Ky. 760, 271 S. W. 1082. It has been held in some cases that an action which challenges the right of a beneficiary to take under the will because of his having given testimony to prove it is a collateral attack upon the judgment of probate, and that consequently every presumption will be indulged in favor of the validity of the judgment including the validity of every disposition made by the will, even to the witnesses. Weaver's Heirs v. Weaver, 11 Ky. Op. 258.

We conclude, therefore, that the statute, supra,

relied on is not applicable to this case, and appellee is not disqualified to take the fund involved.

We now come to the consideration of the question raised as to whether the marriage of Octavius L. Bate, subsequent to the making of his will, revokes the will. It was alleged by amended petition that Octavius L. Bate died in 1931, a resident of the state of Ohio, having theretofore, in February, 1923, made his will here in question. It is further alleged that there is no statutory provision in effect in the state of Ohio, such as or similar to section 4832 of the Kentucky Statutes, and that, under the common-law rule recognized and followed by the highest court of the state of Ohio, marriage of a man or woman after having made a will does not have the effect of revoking such will but same remains in full force and effect.

The court sustained a demurrer to the amended petition, and that question is now before us on this appeal.

On this question appellants rely chiefly upon section 4829, and the exceptions in section 4832, Kentucky Statutes, and certan judicial decisions dealing with wills executed under a power. But since we have concluded that Octavius L. Bate willed the property in controversy to appellee in his own right, it does not become necessary to consider the statute and other authorities dealing strictly with wills made pursuant to a power, except in so far as the right to make such wills is similar to the rights of a person to make a will to property owned outright by such testator. Hence the question to be determined is whether the law of Kentucky or of Ohio controls the will of Octavius L. Bate in the disposition of his personal property; he being a citizen of Ohio and the property in Kentucky.

Section 4831, Kentucky Statutes, provides:

"The will of a person domiciled out of this state at the time of his death shall be valid as to his personal property in this state, if it is executed according to the law of the place where he was domiciled."

Section 4854 provides:

"When a will of a non-resident relative to estate within this Commonwealth has been proved without

the same, an authenticated copy and the certificate of probate thereof may be offered for probate in this Commonwealth. When such copy is offered the court to which it is offered shall presume, in the absence of evidence to the contrary, that the will was duly executed and admitted to probate as a will of personalty in the state or country of the testator's domicile, and shall admit such copy to probate as a will of personalty in this Commonwealth. And if it appears from such copy that the will was proved in the foreign court of probate to have been so executed as to be a valid will of lands in this Commonwealth by the law thereof, such copy may be admitted to probate as a will of real estate.''

The only Kentucky cases cited in brief of counsel are Hussey v. Sargent et al., 116 Ky. 53, 75 S. W. 211, 25 Ky. Law Rep. 315, and Radford v. Fidelity & Columbia Trust Co., 185 Ky. 453, 454, 215 S. W. 285. The Hussey Case did not involve the question of execution of a power. It merely held that the will of a New Hampshire testator which did not offend the law of that state with respect to the creation of perpetuities, was good here, although it did offend the law of Kentucky on that subject.

By analogy of reason, if Octavius L. Bate's will was good in the state of Ohio, i. e., not revoked by reason of his subsequent marriage, it is good here, although it does offend the law of this state. The Kentucky statutes relating to perpetuities, and revocation of wills by subsequent marriage, are equally mandatory in their nature, and we are unable to see any distinction between the Hussey Case, supra, and the case at bar.

The Radford Case, supra, has some bearing on this question. However, in that case a power was involved, but peculiarly, the donor of the power made herself the donee of the power, and both donor and donee were one and the same person. Whatever likeness that case may have to the present case tends to support the argument that the law of the state where the testator was domiciled controls as to personal property.

However, if it be conceded that the law respecting the right of the testator to make wills pursuant to powers is controlling in the case at bar, it is very clear to our minds that the law of the domicile of the testator controls. The only case to which we have been referred

which is strictly in point in support of appellant's argument is the case of Blount v. Walker, 28 S. C. 545, 6 S. E. 558. In that case it was held the law of the state where the property was located controlled. But that case is contrary to the great weight of authority. There was a dissenting opinion in that case, and, in the language of the chancellor, "It must be confessed that this decision (majority decision) was put upon very narrow and technical grounds and the dissenting opinion of Chief Justice Simpson had much the best of the argument."

However, it must be admitted that there is a conflict of authorities on this subject; but in view of our own statutes, taken into consideration with numerous other authorities, we are constrained to the conclusion that inasmuch as Octavius L. Bate's will devising the personal property in controversy was valid under the laws of the state of Ohio, it was not revoked by his subsequent marriage.

Another question raised is, that many years ago a creditor of Octavius L. Bate sought to attach the property which had been appointed to him by his father. The circuit court found that Octavius L. Bate had only a life estate in the property, and entered a judgment accordingly. This judgment has never been appealed from or set aside, and it is insisted that it is binding upon the parties in the present case. We do not think that judgment has any effect in the way of res adjudicata, on the funds here in controversy. The court adjudged only that Octavius L. Bate was vested with a life estate, but that judgment does not purport to dispose with the fee, i. e., whether the fee reverted to the estate of John T. Bate, or passed under the will of Clarence S. Bate to Octavius L. Bate's issue, if any, or, failing issue, whether it was subject to appointment by Octavius, or, failing such appointment, whether it descended to Octavius' brothers and sisters. Thus it will be seen that that judgment affected the life estate only, but not the disposition of the fee.

The judgment is affirmed.

The whole court sitting, except Stites, J.