# Ligget et al. v. Fidelity & Columbia Trust Co. et al.

(Decided June 24, 1938.)

ROBERT F. VAUGHAN and GAVIN H. COCHRAN for appellants.

BRUCE & BULLITT, THOMAS J. WOOD, TRABUE, DOOLAN, HELM & HELM and JOHN E. TARRANT for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The subject matter of this litigation is a part of the estate of John D. Taggart, who died testate in 1898, and the question for our determination is the correct-

ness or incorrectness of the disposition the trial court made of it. This is what the trial court did. He held Anna L. Ligget took a valid life estate, then Robert C. Ligget had a valid estate for his life, then Robert C. Ligget's children took the estate in fee.

The names of these litigants and their relations to this litigation, in this court, are as follows: Robert C. Ligget (individually) the Girard Trust Company and Robert C. Ligget, trustees under the will of Anna L. Ligget, deceased and the Fidelity-Philadelphia Trust Company and Robert C. Ligget, trustees under the will of Anna L. Ligget, deceased, are the appellants.

The appellees are the Fidelity & Columbia Trust Company, trustee under the will of John D. Taggart, deceased, and C. Colket Wilson, Jr. Guardian of Frances B. Ligget, an infant over fourteen years of age, and Audrey H. Ligget, an infant under fourteen years of age.

It is agreed by all parties and this record shows that each of these litigants has duly qualified and is fully authorized to act and to sue in their respective capacities.

We do not regard this record as presenting any question regarding the individual estate of Anna L. Ligget and we are expressing no opinion concerning it and are dealing solely with that portion of the estate of John D. Taggart over which she had and could exercise her power of appointment.

This is an appeal from a judgment of the Jefferson Circuit Court, determining certain property rights between the appellant, Robert C. Ligget, and the appellees, Frances B. Ligget, and Audrey H. Ligget, the infant children of Robert C. Ligget. The rights in question arise as the result of the exercise of a power of appointment by Anna L. Ligget, the mother of the appellant, Robert C. Ligget. The power was created in the will of John D. Taggart, the father of Anna L. Ligget. There is no dispute between the parties with respect to any of the facts involved in the case. The only disagreement arises over the legal conclusions flowing from the agreed facts.

### The Facts.

John D. Taggart died in 1898, a resident of Louisville, Kentucky. He left certain real and personal prop-

erty to the predecessor of the Fidelity & Columbia Trust Company of Louisville, in trust, for his daughter, Anna L. Ligget, for life, "with remainder in fee as" she might "by will appoint" and "in default of such appointment to" her issue.

Anna L. Ligget died a resident of Pennsylvania February 12th, 1937. She left a last will and testament in which she provided that the residue of her estate, including any property over which she might have the power of appointment, should be held in trust by the Girard Trust Company of Philadelphia, and the income therefrom paid to her son, Robert C. Ligget, during his life and upon his death should be paid to Robert's children during their lives. Mrs. Ligget further provided that upon the death of Robert's children the income should be paid per stirpes to his grandchildren until they should reach the age of twenty-one years, at which time the corpus of the trust estate should be distributed among the persons then receiving the income. There are various other limitations in the testatrix' will which it is not necessary to note here.

By a codicil to her will Mrs. Ligget appointed her son co-trustee with the Girard Trust Company for her personal estate. She further provided in the codicil that all real estate which she might own or have the power to appoint should be held in trust by the Fidelity-Philadelphia Trust Company, and her son, Robert C. Ligget, and the income therefrom should be paid, two-thirds to Robert C. Ligget during his life and one-third to his children. The testatrix directed that after the death of Robert C. Ligget, the entire income should be paid to his children during the remainder of their lives. Upon the death of Robert's children, the income from the trust estate is to be paid to their children until they reach the age of twenty-one years, at which time the trust is to terminate.

Both Anna L. Ligget and the appellant, Robert C. Ligget, were alive at the time of the death of John D. Taggart. No children had been born to Robert C. Ligget at that time. The appellees, Frances B. Ligget and Audrey H. Ligget, are the only children of Robert C. Ligget, now in being.

### The Issues.

After the death of Anna L. Ligget and the probate of her will and the codicil thereto, various questions

arose as to who was entitled to the property held by the Fidelity & Columbia Trust Company as Trustee for Anna L. Ligget under the will of John D. Taggart, and as to the nature of the estates of the various claimants. Robert C. Ligget asserted that he was entitled to have the property turned over to him free and clear of all trusts. His children, on the other hand, through their Guardian, took the position that their father had only a life estate in the property and that they also held a life estate as well as the remainder interest in fee.

Faced with these various contentions, the Fidelity & Columbia Trust Company brought the present proceeding in the Jefferson Circuit Court under the Declaratory Judgment Act, Civil Code of Practice, section 639a-1 et seq., requesting a binding determination of the rights of the various claimants. The Circuit Court adjudged that Robert C. Ligget took a life estate in the property and that his children took the remainder interest in fee.

The issues are well defined. Robert C. Ligget claims that the exercise by his mother, Anna L. Ligget, of the power of appointment given her in the will of John D. Taggart was unauthorized and void and that he is entitled to have the trust estate in fee. Mr. Ligget's children, on the other hand, contend that although the remainder interest appointed by Anna L. Ligget to her great grandchildren is void as a violation of the rule against perpetuities, nevertheless the life estates appointed to their father and to themselves are valid and that in addition to their life estate they are also entitled to the remainder, the two interests merging to give them the ultimate remainder in fee.

### Rights of Parties Governed by Kentucky Law.

As the power created in the will of John D. Taggart was exercised by the will of Anna L. Ligget, who was domiciled at the time of her death in Pennsylvania, the preliminary question as to whether the law of Pennsylvania or the law of Kentucky applies might be raised. Counsel for appellant has at no time contended that the Pennsylvania law rather than the Kentucky law is applicable, and the authorities are conclusive that the law of the domicile of the donor of a power is controlling upon questions such as those at issue in this case. This rule is well stated in 49 C. J. p. 1298, Sec. 132, as follows:

"By an application of the principle that an execution of a power takes effect as a disposition not of the donee's property but of that of the donor, questions as to the validity and sufficiency of the execution of a power are, as a general rule, to be determined, in the case of personalty by the law of the domicile of the donor of the power, and, in the case of real estate, by the law of the place where it is situate."

Upon these principles the law of Kentucky applies to the rights of the parties in this controversy. See also Wilmington Trust Company v. Wilmington Trust Company, Del. Ch., 186 A. 903.

### The Effect of an Execution of a Power of Appointment is to Make Such Act That of the Original Testator.

It is well settled in Kentucky as in every other common law jurisdiction that an estate which is transferred under a power of appointment is to be considered as passing under the will of the donor or creator or the power of appointment. In order to test an exercise of a power to see whether or not it violates the rule against perpetuities the exercise must be read into the will of the original testator, and it must be ascertained whether, if the original testator, had made such a disposition of the property as the donee of the power has made, such a disposition would have been valid. Professor Gray in his "Rule Against Perpetuities", thus states the law:

"No estate or interest can be limited under a particular power, which would have been too remote, if limited in the deed or will creating the power. The test of the validity of the estates raised is to place them in the deed creating the power, in lieu of the power itself.

"This does not mean that the language of the instrument executing the power must be read into the instrument creating it. To do this would often produce manifest absurdity though the limitations were of the most unobjectionable character. Events future at the time of the creation of the power would be spoken of as past; gifts would be made by name to persons not in existence. What these expressions mean is that no appointment made under a power is good, unless at the time of the

creation of the power it was certain that interest would vest, if at all, within twenty-one years after lives then in being.''

Gray's Rule Against Perpetuities, Sec. 515.

In applying the test, Professor Gray says that two questions must be asked.

"(1) What appointment is in fact made?

"(2) Was it certain at the time of the creation of the power that such appointment, if made, would vest within twenty-one years after lives in being?

"The first question is to be determined by considering what the language of the appointment means as used by the donee, at the time he uses it; and thus having found out what appointment the donee means to make, the second question is to be asked, viz.; was it certain, when the power was created, that if the donee should ever make the appointment he has in fact made, it must vest within the required limits."

Gray's Rule Against Perpetuities, Sec. 523a.

This rule and the method of applying it have been approved by this court. See Brown v. Columbia Finance & Trust Company, 123 Ky. 775, 97 S. W. 421, 30 Ky. Law Rep. 110; Tyler v. Fidelity & Columbia Trust Company, 158 Ky. 280, 164 S. W. 939; Barnes v. Graves, 259 Ky. 180, 82 S. W. (2d) 297; De Charette v. De Charette, 264 Ky. 525, 94 S. W. (2d) 1018, 104 A. L. R. 1455.

As a matter of fact there is no disagreement between the parties in this case as to this principle. It is recognized by all parties as correct. Applying the above method of procedure to the facts involved in this case, we have a situation in which John D. Taggart leaves property (1) to his daughter, Anna L. Ligget, for life with the remainder (2) to her son, Robert C. Ligget, who was in being and about 7 years old at the death of John D. Taggart, for life with remainder (3) to the children of Robert C. Ligget for life with remainder (4) to the grandchildren of Robert C. Ligget in fee when they reach the age of twenty-one years. The situation pictured in the will of Anna L. Ligget might be more plainly demonstrated by the following diagram:

JOHN D. TAGGART
(Original testator and donor of
Mrs. Ligget's power).
to

ANNA L. LIGGET          FOR LIFE
(Daughter of John D. Taggart
and donee of his power and in
being at his death).
then to

ROBERT C. LIGGET          FOR LIFE
(Son of Anna L. Ligget. Grand-
son of John D. Taggart and in
being at his death).
then to

ROBERT C. LIGGET'S
CHILDREN          FOR LIFE
(Great grandchildren of John
D. Taggart and *not* in being at
his death).
then to

ROBERT C. LIGGET'S
GRANDCHILDREN          IN FEE AT AGE 21
(Great, great grandchildren of
John D. Taggart).

Obviously, the estate left to the grandchildren of
Robert C. Ligget is void, being in violation of Section
2360 of the Kentucky Statutes, which is as follows:

> "The absolute power of alienation shall not be
> suspended, by any limitation or condition what-
> ever, for a longer period than during the continu-
> ance of a life or lives in being at the creation of
> the estate, and twenty-one years and ten months
> thereafter."

It is possible and most probable that the life es-
tates which are to follow the lives in being at the time
of Mr. Taggart's death would last for much more than
twenty-one years and ten months, and that children
would thereafter be born, and consequently the final
vesting of estates in these children would be delayed
beyond the period prescribed by the Statutes. It does
not seem necessary to discuss further the invalidity of
the estates which Mrs. Ligget attempted to create in
her great grandchildren. Indeed, this is admitted by all
parties.

The question next presented for consideration is

whether or not the life estates which Mrs. Ligget attempted to give to her son and her grandchildren are valid. Clearly, they are. The life estates of her grandchildren must necessarily vest upon the death of Robert C. Ligget, who was a life in being at the death of the original testator.

A similar situation was presented and discussed and the life estate in question upheld, in Chenoweth v. Bullitt, 224 Ky. 698, 6 S. W. (2d) 1061. There William C. Bullitt devised certain property to his wife for life with remainder to Henry Bullitt and his "then wife" for their joint lives, with remainder to the survivor for life and remainder in fee to Henry's descendants. The Court pointed out that it was possible, though not probable, for a girl child to be born after the death of William C. Bullitt and during the life of his widow and for this child to grow up and marry Henry Bullitt during the life of William C. Bullitt's widow, all after the death of Mrs. Henry Bullitt who was living at the time of the death of William C. Bullitt. This girl who might grow up and marry Henry Bullitt during the lifetime of Mrs. William C. Bullitt would, on the latter's death, be Henry's "then wife" and thus be the devisee named by William C. Bullitt's will. Upon Henry's death, all of the lives in being at the time of William C. Bullitt's death would have expired, and since the second Mrs. Henry Bullitt born under the supposition after the death of William C. Bullitt, might live more than twenty-one years and ten months after the death of Henry Bullitt, it was obvious that the limitations following her life estate were too remote. After so concluding, the Court states (page 1069):

"Now, the limitations beyond Mrs. Henry Bullitt's life estate being void, was her life estate itself void? As stated, it vested in time and was not void under the rule. It is true it might continue beyond the period prescribed by the rule; but, as it vested in time, it was not alone on that account, as we have seen, invalid. Did the fact that the ultimate remainders were invalid, as being against the rule, render Mrs. Bullitt's life estate invalid? As to this, the chancellor said:

" 'Upon principle, there would seem to be no reason why the invalidity of ultimate or penultimate limitations should affect an antecedent estate

which is good itself. A devise to one for life, without more, is good; the reversion is in the devisor's heirs. Whatever may be the rule in other jurisdictions it is not the rule in this state that the whole devise is bad when its ultimate limitations are bad. [Citing cases.]

"'I think that the devise to Mrs. Bullitt for life was not defeated merely because the subsequent limitations were bad.' In this we concur."

We think the reasoning of the Court in the Bullitt Case applies with equal force to the situation in the present case so far as the appellees, Frances B. Ligget and Audrey H. Ligget, are concerned, and that the conclusion there reached by the Court determines the validity of their life interest, and that of other children of Robert C. Ligget that may be hereafter born.

### What Becomes of the Corpus of This Estate?

So far we have merely dealt with the income from the property which John D. Taggart set aside as the share for his daughter Anna L. Ligget. She has enjoyed that income during her life. Her only child, Robert C. Ligget, is enjoying the income from this property now, and we have held that his children will enjoy such income during their lives, after his death. So far, the judgment of the trial court is in harmony with our holdings.

It is contended by the guardian for the two children of Robert C. Ligget, who are now in being, that it is the rule in Kentucky that where a life estate is void for remoteness because of a violation of the rule against perpetuities, the persons vested with the last valid life estates take the remainder, or corpus, in fee. And upon that argument he induced the trial court to hold that the children of Robert C. Ligget took in addition to valid life estates in the income from this trust property, also the corpus of the trust itself. The guardian by his argument led the trial court into error.

To demonstrate that error we wish to call attention to certain statutes of Kentucky. The first is Section 2360 which first appeared upon our statute books as Sec. 34, Chap. 80, Vol. 2 of Stanton's Revised Statutes, which became effective July 1st, 1852. The English Rule against perpetuities had previously been in effect in

this state. See Moore's Trustees v. Howe's Heirs, 20 Ky. 199, 4 T. B. Mon. 199, and Attorney General v. Wallace's Devisees, 46 Ky. 611, 7 B. Mon. 611. We have nowhere found anything to indicate that by the enactment of Section 2360, Kentucky Statutes, the Legislature intended to repeal the rule against perpetuities which we derived from the common law. On the contrary, in the case of Cammack v. Allen, 199 Ky. 268, 250 S. W. 963, we considered this Section 2360 and held it was but declaratory of the common law rule against perpetuities. We noted in that opinion that Section 2360 was frequently referred to as our statute against perpetuities and held that the statute had been construed as such a rule, and meant the same as the English rule and related to the time of the vesting of the title.

The next statute we want to consider is Section 4843, Kentucky Statutes, which reads as follows:

"Unless a contrary intention shall appear by the will such real or personal estate, or interest therein, as shall be comprised in any devise in such will which shall fail or be void, or otherwise incapable of taking effect, shall not be included in the residuary devise contained in such will, but shall pass as in case of intestacy."

The applicable part of this statute to the question before us is simply this:

"* * * Such real or personal estate, or interest therein, as shall be comprised in any devise in such will which shall * * * be void * * * shall pass as in case of intestacy."

That means, in this case, the corpus of this property after these life estates were held valid, shall pass just as though Anna L. Ligget had died without fully exercising the power, for we have held that the attempt she made in her will to devise the corpus in this estate, after the valid life estates, to the great, great, grandchildren of John D. Taggart was void. To the extent that her exercise of the power was void the property would pass as in default of appointment. So, we must now go back to the will of John D. Taggart and examine its provisions and we find that in giving property to his daughters, one of whom was Anna L. Ligget, he gave it to them for life, with remainder in fee,

as they shall respectively by will appoint and in default of such appointment, to their respective issue.

Hence we hold that when the attempted devise by Anna L. Ligget to the great, great grandchildren of John D. Taggart was found void, for remoteness, then the will of John D. Taggart became operative, and the title to the corpus of this trust property after the death of Robert C. Ligget's children (John D. Taggart's great, grandchildren) vested under the will of John D. Taggart in the issue of Anna L. Ligget, to wit: in Robert C. Ligget. This remainder was bound to vest upon the death of Anna L. Ligget. It, therefore, does not violate the rule.

The guardian for the children of Robert C. Ligget in support of his contention cites the following cases: Brown v. Columbia Finance & Trust Company, 123 Ky. 775, 97 S. W. 421, 30 Ky. Law Rep. 110; Beall v. Wilson, 146 Ky. 646, 143 S. W. 55; Lindner v. Ehrich, 147 Ky. 85, 143 S. W. 778; Tyler v. Fidelity & Columbia Trust Company, 158 Ky. 280, 164 S. W. 939; Barnes v. Graves, 259 Ky. 180, 82 S. W. (2d) 297. We have examined them and they do not support his contention. It has merely happened that the one who took the last valid life estate was also the one who would take the property under our statute of descent and distribution. Such taker would take it under the statute of descent and distribution and not because he happened to be the holder of the last valid life estate.

In the case of Tyler v. Fidelity & Columbia Trust Company, 158 Ky. 280, 164 S. W. 939, we find this (page 942):

"The modern rule permits the estate to progress under the will up to the point where the rule against perpetuities begins to operate, and creates a fee in the last person who, under the statute, is authorized to take it."

Perhaps it was this that led the trial court into error. A more accurate statement would be:

The modern rule permits the estate to progress under the will up to the point where the rule against perpetuities begins to operate and creates a fee in the person who, under the statute of descent and distribution, or the will of the donor of the power, is authorized to take it.

That person in this case as we have said is Robert C. Ligget and in him is vested the fee simple title in remainder to the corpus of this estate. Of course, he will never live to enjoy its possession, but the ownership of such corpus is vested in him absolutely, and he may sell it, devise it, or make such disposition of it, as he pleases, subject always of course, to the life estates of his children in the income therefrom when under the will of Anna L. Ligget they become entitled to the enjoyment of such income.

The judgment of the trial court is reversed. It will be set aside and in lieu thereof a judgment entered consistent with this opinion.

The whole court sitting.